IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


EFRAIN CASTRO CHAUTLA,                )
                                      )
                    Petitioner,       )
                                      )
            v.                        )    1:12CV771
                                      )
REUBEN F. YOUNG,                      )
                                      )
                    Respondent.       )


**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On October 14, 2010, in the Superior Court of Durham County, Petitioner pleaded guilty to trafficking in cocaine by sale and trafficking in cocaine by possession in case 09 CRS 48037, and received a sentence of 70 to 84 months of imprisonment. (Docket Entry 9, Exs. 1 & 2; see also Docket Entry 2, ¶¶ 1-6.) Petitioner did not file a direct appeal. (Docket Entry 2, ¶ 8.) Nor did he take any further action until May 1, 2012, when he sent a pro se motion for appropriate relief to the state trial court. (Docket Entry 9, Ex. 3; see also Docket Entry 2, ¶ 11(a).) That motion was summarily denied. (Docket Entry 9, Ex. 4; see also Docket Entry 2, ¶ 11(a)(7)-(8).) Petitioner then filed a petition for a writ of certiorari with the North Carolina Court of Appeals which he dated as submitted on June 4, 2012, and which that court received on June 6, 2012. (Docket Entry 9, Ex. 5; see also Docket Entry 2, ¶ 11(b).) Following the denial of that petition on June 25, 2012

(Docket Entry 9, Ex. 7, see also Docket Entry 2, ¶ 11(b)(7)-(8)), Petitioner submitted his Petition in this Court (Docket Entry 2), which he dated as mailed on July 18, 2012 (id. at 14),[1] and which the Court received on July 25, 2012. (Id. at 1.) Respondent has moved to dismiss the Petition as outside the applicable statute of limitation (Docket Entry 8), Petitioner has filed a responsive document (Docket Entry 11), and the matter now comes before the undersigned United States Magistrate Judge for a recommended ruling (see Docket Entry dated Nov. 14, 2012).

## Petitioner's Claims

Petitioner raises two claims for relief in his Petition: (1) ineffective assistance of counsel in that his attorney failed to question, object to or investigate the discrepancy between the quantity of cocaine described on the arrest warrant and the quantity reported by the State Bureau of Investigation's laboratory; and (2) various due process of law violations related to the handling of the drug evidence. (Docket Entry 2, ¶ 12.)

---

[1] This pin citation (as well as others for the same document) refers to the page number in the footer appended to said document by the CM/ECF system.

**Discussion**

Respondent requests dismissal on the ground that the Petition was filed[2] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1).

In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[2] "In [<u>Houston v. Lack</u>, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." <u>Morales-Rivera v. United States</u>, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." <u>Id.</u> at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See <u>Allen v. Mitchell</u>, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. <u>United States v. Torres</u>, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); <u>but see</u> <u>Smith v. Woodard</u>, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that <u>Houston</u>'s rule governed filing date of § 2254 petition); <u>Ostrander v. Angelone</u>, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court declines to consider this matter further.

-3-

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the state trial court entered judgment against Petitioner on October 14, 2010. (Docket Entry 9, Ex. 2.) As Respondent has asserted (Docket Entry 9 at 2-3), and Petitioner has failed to contest (see Docket Entry 11), Petitioner's conviction became final on that date because he pled guilty and received a sentence in the presumptive sentencing range for his offense. See N.C. Gen. Stat. § 90-95(h)(3)(b). In North Carolina, defendants who plead guilty have very limited grounds on which they can appeal. See State v. Smith, 193 N.C. App. 739, 741-42, 668 S.E.2d 612, 613-14 (2008) (enumerating limited grounds for appeal for defendants who plead guilty); see also N.C. Gen. Stat. §§ 15A-

-4-

979(b) & 15A-1444. Petitioner has not alleged or otherwise shown that any of these grounds existed and thus Petitioner had no right to appeal. Under these circumstances, Petitioner's time to file a habeas petition in this Court began to run on October 14, 2010. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004); accord Redfear v. Smith, No. 5:07CV73-03-MU, 2007 WL 3046345, at *2 (W.D.N.C. Oct. 17, 2007) (unpublished); Marsh v. Beck, No. 1:06CV1108, 2007 WL 2793444, at *2 (M.D.N.C. Sept. 26, 2007) (unpublished).[3] It then ran for 365 days until it expired a year later on October 14, 2011, more than nine months before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any filings in the state courts until at least May 1, 2012, over six months after his time to file a federal habeas claim already had expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

---

[3] Even if Petitioner had possessed a right to appeal, any such right would have expired 14 days after the trial court entered judgment against him. See N.C. R. App. P., Rule 4(a)(2). Given when Petitioner filed his instant Petition, those 14 days would not affect the timeliness analysis.

-5-

Petitioner neither disputes the foregoing time-line nor claims that his Petition qualifies as timely under § 2244(d)(1), but he does list reasons why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 11 at 1-6; see also Docket Entry 2, ¶ 18.) In other words, Petitioner requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context. See Holland v. Florida, 560 U.S. ___, ___, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

First, Petitioner asserts that he is a native of Mexico and either speaks "limited English" (Docket Entry 2, ¶ 18) or "does not speak English" (Docket Entry 11 at 5). One federal circuit explicitly has rejected the position that the one-year, post-conviction filing limit "should be equitably tolled due to [a petitioner's] difficulties with the English language." United States v. Montano, 398 F.3d 1276, 1280 n.5 (11th Cir. 2005).[4] In

---

[4] In addition, "[t]hough [the United States Court of Appeals for the Tenth Circuit] ha[s] not published a decision directly addressing proficiency in the English language, [its] unpublished decisions have consistently and summarily refused to consider such a circumstance as extraordinary, warranting equitable tolling." Yang v. Archuleta, 525 F.3d 925, 929 (10th Cir. 2008) (finding particular allegations regarding language difficulties insufficient and stating that, "[b]ecause [the petitioner] has not proffered a factual basis justifying an exploration into whether a language barrier can ever be a contributing component warranting equitable tolling, [it] need not decide that issue"). The United States Court of Appeals for the Eighth Circuit also has ruled a petitioner's lack of English fluency an insufficient basis for equitable tolling in an unpublished decision. See Mendoza v. Minnesota, 100 F. App'x 587, 587-88 (8th Cir. 2004) ("[The petitioner] asked the district court to equitably toll the
(continued...)

the same vein, another circuit has held that a petitioner's struggles in navigating the legal process as a function of "illiteracy" fail to qualify as an extraordinary circumstance sufficient to trigger equitable tolling in this context. Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999).

In the absence of authority on point from the Fourth Circuit, members of this Court consistently have followed Turner. See, e.g., Jackson v. United States, Nos. 1:09CV112, 1:07CR169-5, 2009 WL 5171869, at *2-3 (M.D.N.C. Dec. 22, 2009) (unpublished) (Dixon, M.J.) (citing Turner in recommending against grant of equitable tolling based on petitioner's allegation of "being learning-disabled . . . because illiteracy does not constitute grounds for equitable tolling"), adopted, slip op. (M.D.N.C. May 17, 2010) (Beaty, C.J.); Bryant v. Beck, No. 1:08CV181, 2008 WL 2949247, at *2-3 (M.D.N.C. July 30, 2008) (unpublished) (Eliason, M.J.) (recommending dismissal for untimeliness despite petitioner's alleged lack of education because "illiteracy does not constitute grounds for equitable tolling" and citing Turner), adopted, slip op. (M.D.N.C. Feb. 5, 2009) (Osteen, Jr., J.); Burns v. Beck, 349 F. Supp. 2d 971, 974 (M.D.N.C. 2004) (Eliason, M.J.) (relying on Turner in stating in dicta within recommendation that "illiteracy

---

[4](...continued)
limitation period . . . because he was not fluent in English . . . . We agree with the district court that the grounds asserted by [the petitioner] do not constitute extraordinary circumstances justifying equitable tolling.").

-7-

does not constitute grounds for equitable tolling"), adopted, id. at 972 (Beaty, J.).[5]

Moreover, in at least one case, this Court (via Chief Judge James A. Beaty, Jr.'s adoption of Magistrate Judge Russell A. Eliason's recommendation) relied on Turner in ruling that a petitioner's "assert[ion] that his inability to speak English . . . prevented him from filing within the limitations period [did not] . . . constitute an exceptional circumstance beyond [his] control which made it impossible to timely file his claims." Silva v. Thomas, No. 1:08CV64, 2008 WL 5636333, at *3 (M.D.N.C. May 29, 2008) (unpublished), adopted, slip op. (M.D.N.C. July 15, 2008). Other district courts in this Circuit uniformly have reached the same conclusion. See, e.g., Mendoza-Miguel v. United States, Nos. 7:08CR127BO1, 7:10CV205BO, 2011 WL 1420860, at *2 (E.D.N.C. Apr. 12, 2011) (unpublished) ("Petitioner's inability to access legal materials in Spanish – his only proficient language – is not a sufficient basis to warrant the doctrine of equitable tolling."); Osnarque v. Thomas, No. 3:08CV76-1-MU, 2009 WL 650551, at *1 (W.D.N.C. Mar. 11, 2009) ("Petitioner also again asserts that he should be entitled to equitable tolling because he is a layman of

---

[5] Other district courts in this Circuit have done the same. See, e.g., Bell v. Keller, No. 5:09HC2167D, 2011 WL 845913, at *4 (E.D.N.C. Mar. 8, 2011) (unpublished); Scales v. Johnson, No. 7:10CV57, 2010 WL 2332656, at *2 (W.D. Va. June 9, 2010) (unpublished); Bey v. Jones, No. 5:09CV128-3-MU, 2009 WL 4642074, at *2 (W.D.N.C. Dec. 1, 2009) (unpublished); Junkins v. McBride, No. 104CV169, 2005 WL 1330549, at *3 (N.D.W. Va. June 3, 2005) (unpublished), adopted, slip op. (N.D.W. Va. June 22, 2005); see also Lareau v. Reynolds, No. 2:11-684-RBH-BHH, 2011 WL 2036335, at *3 (D.S.C. Apr. 29, 2011) (unpublished) (citing Burns, 349 F. Supp. 2d at 974, in observing that "courts have held that illiteracy is not an extraordinary circumstance under the test of equitable tolling"), adopted, No. 2:11-CV-684-RBH, 2011 WL 2036297 (D.S.C. May 24, 2011) (unpublished).

-8-

the law and he does not speak English well. . . . [N]either of these reasons satisfy the high standard required for equitable tolling."); Bustos v. Faulkenberry, No. 2:06CV1205MBS, 2007 WL 540324, at *3 (D.S.C. Feb. 15, 2007) (unpublished) ("Petitioner alleges that he missed the deadline due to his limited grasp of the English language. However, . . . this does not amount to extraordinary circumstances excusing Petitioner's delay.").

Consistent with the holdings of two federal appellate courts (as well as unpublished decisions by two more) and rulings consistently rendered in this Court and other district courts of the Fourth Circuit, the Court should conclude that language-related difficulties fail to provide a basis for equitable tolling.

Alternatively, the Court should hold that, even if — as some courts have indicated, see Pabon v. Mahanoy, 654 F.3d 385, 398-401 & n.24 (3d Cir. 2011); Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008); and Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006) — lack of fluency in English might support equitable tolling in some cases, Petitioner has made an insufficient showing to warrant such relief in this case. Specifically, Petitioner has not explained in any meaningful way why he could not, with due diligence, make all appropriate filings before his one-year, post-conviction limitation period expired despite his language issues. (See Docket Entry 11 at 5-6.) For example, Petitioner has failed to detail his efforts to obtain language assistance before the expiration of his one-year federal filing period. (See id.) Petitioner thus has not met his burden of showing that any "extraordinary circumstance" prevented

-9-

him from making a timely filing in spite of his exercise of proper diligence.  See generally Yang v. Archuleta, 525 F.3d 925, 930 (10th Cir. 2008) (rejecting request for equitable tolling based on language deficiency where petitioner failed to provide detailed accounting of his actions "to secure assistance with his language barriers inside or outside prison boundaries").

Second, Petitioner complains that "the state failed to advise him of the appeal/post conviction relief remedies - via - counsel." (Docket Entry 2, ¶ 18; see also Docket Entry 11 at 5 (complaining that trial counsel "did not appeal, nor did he explain any post-conviction relief procedures").)  As an initial matter, Petitioner has not identified (and independent research has failed to reveal) any authority for the proposition that trial counsel has an obligation to advise a defendant of post-conviction options other than direct appeal.  Further, no basis exists for Petitioner's argument that, under the circumstances present here, his trial counsel had an obligation to advise him about a direct appeal, much less post-conviction remedies.

The Supreme Court has held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  In assessing whether counsel has such a duty, the Court should consider "all the information counsel knew or should have known."  Id. (citing

-10-

Strickland v. Washington, 466 U.S. 668, 690 (1984)). "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. Under the test in Roe, Petitioner's trial counsel did not have a duty to consult with Petitioner about further proceedings, given that Petitioner pleaded guilty, received a sentence consistent with his stipulations at the time of his plea, lacked any right to appeal, and failed to allege he ever demonstrated to counsel any interest in pursuing further litigation.

Even if Petitioner's trial counsel had borne a duty to advise Petitioner about post-conviction remedies and failed to satisfy it in this case, Petitioner's argument still misses the mark. Simple negligence does not warrant equitable tolling. See Holland, 560 U.S. at ___, 130 S. Ct. at 2564; see also Hutchinson v. Florida, 677 F.3d 1097, 1100 (11th Cir. 2012) ("If attorney miscalculation, error, or negligence were enough for equitable tolling, the § 2244(d) statute of limitations would be tolled to the brink of extinction . . . ."). "[T]o rise to the level necessary to constitute an 'extraordinary circumstance,' . . . attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." Rivas v. Fischer, 687 F.3d 514, 538 (2d Cir. 2012); see also Maples v. Thomas, 565 U.S. ___, ___ - ___ & n.7, 132 S. Ct. 912, 922-27 & n.7

-11-

(2012) (holding that attorneys' abandonment of petitioner constituted cause to overcome procedural default and remarking that distinction between attorney negligence and attorney abandonment should apply equally in equitable tolling context). Petitioner has not alleged facts amounting to abandonment by his trial counsel.

Finally, Petitioner alleges that he first learned about his habeas remedies when he met a "jail house lawyer around April 2012" (Docket Entry 2, ¶ 18; accord Docket Entry 11 at 5), and complains that the North Carolina Department of Public Safety "does not provide inmates with a law library, nor does the [Department] notify or advise non English speaking inmates of the North Carolina Prisoner Legal Services, Inc." (Docket Entry 11 at 5). In these regards, Petitioner essentially argues that the Court should excuse him from complying with the one-year statute of limitations because he lacked familiarity with post-conviction remedies. However, unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner, 177 F.3d at 392; see also Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (concluding that lack of prison libraries and delay in receipt of support from North Carolina Prisoner Legal Services did not warrant equitable tolling) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished) (citing cases); Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704,

at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.).

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 8) be granted, that the Petition (Docket Entry 2) be denied, and that Judgment be entered dismissing this action.

                                            /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                                   **United States Magistrate Judge**

February 4, 2013